**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONALD PAKUTKA<br>The Plaintiff | : | CIVIL ACTION NO. |
| vs. | : | |
| CONTINENTAL SCRAP METAL<br>The Defendant | : | MARCH 30, 2017 |

# FIRST AMENDED COMPLAINT

1. The plaintiff Ronald Pakutka (hereafter "Plaintiff") brings this action to redress certain injuries that he suffered as a result of the termination of his employment pursuant to the Surface Transportation Assistance Act, 49 U.S.C. Sec. 31105, *et seq.*, the Fair Labor Standards Act, 29 U.S.C. Sec. 207(a)(1), *et seq.*, and Connecticut State law.
2. Plaintiff at all times relevant to the complaint resided in the Town of Southington, State of Connecticut.
3. The defendant Continental Scrap Metal, LLC (hereafter "Defendant") is a limited liability company operating a scrap metal business at 1275 Wolcott Rd, Wolcott, Connecticut.
4. Plaintiff worked for Defendant's location at 1275 Wolcott Rd, Wolcott, Connecticut. Any references to Defendant's "facility" or location shall reference this address unless otherwise stated.
5. Defendant employs more than 30 employees.
6. On or about June 13, 2015, Plaintiff was hired by Defendant to work approximately 60 to 70 hours per week for a net pay of $880.00 per week.
7. Plaintiff began working for Defendant as a CDL Driver and Laborer on or about June 15, 2015.

8. During the course of the Plaintiff's employment, Defendant paid Plaintiff and other employees partly through payroll, and partly in cash.
9. During the course of Plaintiff's employment, Defendant paid Plaintiff less than 50% of Plaintiff's earned wages through payroll.
10. The cash payments which Defendant made to Plaintiff never totaled the full amount of earned wages.
11. Upon information and belief, the Defendant's payroll / cash split was made in order to avoid taxation.
12. During the course of Plaintiff's employment, Defendant also directed Plaintiff to deliver cash envelopes to some of Defendant's customers on Plaintiff's truck route.
13. Upon information and belief, the aforementioned cash envelope deliveries were in exchange for loads of scrap metal that Plaintiff would pick up and bring to Defendant to be weighed and processed.
14. Upon information and belief, the cash envelopes to customers were for the purpose of avoiding taxation.
15. Plaintiff had favorable performance with Defendant.
16. During the course of the Plaintiff's employment with Defendant, he encountered numerous safety violations on commercial motor vehicles.
17. During the course of Plaintiff's employment with Defendant, he encountered numerous fire safety violations at Defendant's facility.
18. During the course of Plaintiff's employment with Defendant, he encountered numerous environmental safety violations, such as Defendant's continued chemical runoff into the ground.
19. From approximately June 15, 2015 to July 15, 2015, Plaintiff reported his

concerns to Defendant, in particular his supervisor Adam Pratt and the Defendant's owner, Rob Silas.

20. Defendant failed, neglected and refused to address the concerns raised by Plaintiff.
21. Plaintiff made an official complaint to the DMV on or about July 20, 2015, complaining of vehicle maintenance issues.
22. Plaintiff made an official complaint to the Connecticut Department of Energy and Environmental Protection (hereafter "DEEP") on or about July 20, 2015, complaining of chemical runoff into the ground.
23. Plaintiff made an official complaint to Fire Safety on or about July 20, 2015, complaining of fire code violations at Defendant's facility.
24. On or about July 21, 2015, Plaintiff informed his supervisor Adam Pratt that he had contacted government agencies and filed complaints.
25. On or about July 21, 2015, Plaintiff was called into Defendant's upstairs conference room; Defendant scolded Plaintiff for making complaints and demoted Plaintiff to a position as Laborer rather than CDL Driver / Laborer.
26. On or about July 21, 2015, Defendant told Plaintiff to keep things in-house instead of filing public complaints.
27. On or about July 21, 2015, Plaintiff immediately called the Occupational Safety and Health Administration (hereafter "OSHA") within earshot of the Defendant and complained of retaliation.
28. On or about July 21, 2015, Defendant overheard Plaintiff's call to OSHA and began arguing with Plaintiff while Plaintiff was on the phone with OSHA.
29. On or about July 21, 2015, Defendant demanded Plaintiff stop his telephone call to OSHA and return to his regular schedule.

30. On or about July 22, 2015, Plaintiff contacted OSHA requesting protection from Defendant for making the aforementioned complaints.

31. On or about July 22, 2015, Plaintiff was informed by the Fire Marshall that his complaint would be investigated.

32. On or about July 23, 2015, the Town of Wolcott Office of Fire Marshall conducted an investigation of Defendant's facility and after finding violations concerning blocked exits, lighting, and fire extinguishers, ordered these violations be remedied within 30 days.

33. On or about July 23, 2015, Plaintiff called the Connecticut Department of Motor Vehicles (hereafter "DMV") and informed a DMV inspecter of numerous maintenance violations.

34. On or about July 23, 2015, Plaintiff was stopped while driving Defendant's truck by the DMV.

35. On or about July 23, 3015, Plaintiff also informed the DMV inspecter that driver qualification files, or "DQ" files, were not being maintained, and that none of the drivers were tested for controlled substances and alcohol as required under 49 CFR Sect. 391.23(e).

36. On or about July 23, 2015, Defendant's truck failed inspection and was placed on "out of service" status due to improper load securement, power steering violations, and brakes out of service.

37. Any one of the three citations from the above paragraph would have put the truck in "out of service" status.

38. On or about July 24, 2015, Plaintiff met with OSHA and he was informed that his case would be closed because Plaintiff had not been terminated, and that the file would remain closed unless further retaliation occurred.

39. On or about August 4, 2015 and August 20, 2015, DEEP conducted on-site inspections of the Defendant's facilities due to the Plaintiff's complaints.
40. The last day Plaintiff worked for Defendant was August 12, 2015, and on said date he complained of the Defendant's orders to deliver envelopes of cash to customers, believing it to be tax evasion.
41. On or about August 15, 2015, Defendant called Plaintiff in for a meeting and gave him a layoff slip and initialed it, claiming orally that the Defendant lacked work.
42. During said meeting, Defendant claimed he lacked work, but he had just hired a new employee on August 13, 2015.
43. On or about August 15, 2015, Defendant recorded the conversation in secret.
44. On or about August 15, 2015, Plaintiff contacted OSHA requesting that the investigaitotion into retaliation against him be reopened due to the termination.
45. On or about August 17, 2015, Plaintiff made a formal complaint to the Connecticut Department of Labor about his final paycheck not having been received, overtime wages, and not being paid for all hours worked.
46. On or about August 17, 2015, Plaintiff made a formal complaint to the Internal Revenue Service (hereafter "IRS") concerning Defendant's unreported income, failure to withhold tax, and failure to pay tax.
47. On or about August 20, 2015, after Plaintiff's formal complaint to the Connecticut Department of Labor, Plaintiff received a paystub from the Defendant which differed from previous paystubs and layoff slips in that it referenced a rate of $16.00 per hour and recorded the number of hours.
48. On or about August 25, 2015, following the aforementioned complaints by

Plaintiff, Defendant made a formal complaint to the Wolcott police that Plaintiff was engaged in extortion.

49. On or about August 25, 2015, Defendant falsely claimed to the police that Plaintiff was terminated for refusing to work for a week.

50. Earlier on or about August 15, 2015, Defendant claimed Plaintiff was laid off for lack of work, both orally and on Plaintiff's layoff slip.

51. On or about August 25, 2015, Defendant also falsely claimed to the police that he was not cited for any regulation violations by the Wolcott Fire Marshal or the DMV.

52. Defendant's charge of extortion was in retaliation for the Plaintiff's complaints against it.

53. On or about December 18, 2015, while Defendant's false charge of extortion continued to be pending, DMV investigators continued to investigate Plaintiff's charges concerning Defendant missing driver qualificaiton files and Defendant's failure to conduct controlled substances and alcohol tests.

54. On or about April 8, 2016, DMV investigators issued a report based on their follow up investigations to Plaintiff's July 23, 2015 complaints. The follow up investigation dates were November 10, 2015, December 18, 2015, March 21, 2016 and March 22, 2016.

55. In the course of the aforementioned follow up investigations to Mr. Pakutka's July 23, 2015 complaint, the DMV discovered dozens of infractions, including but not limited to missing driver qualificaiton records, failure to conduct controlled substance and alcohol tests, and maintenance violations which put several vehicles into "out of service" status.

56. On or about April 8, 2016, due to the Defendant's continued failure to correct

its infractions, the DMV isued the Defendant a file.

57. Due to Defendant's false charge of extortion, Plaintiff was required to attend several criminal hearings and expend significant legal fees in order to protect his penal intrests.

58. On or about February 2, 2017, a criminal hearing was held resulting in the dismissal of all criminal charges against Mr. Pakutka without objection from the prosecutor.

**Count One: STAA Retaliation under 49 U.S.C. Sec 31105, *et seq.***

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has incurred attorney fees and litigation expenses.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Two: Nonpayment of Wages under FLSA, 29 U.S.C. Sec. 207(a)(1)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages and overtime wages.

60. As a result of the Defendant's conduct, the Plaintiff has incurred attorney fees and litigation expenses.

**Count Three: Retaliation under FLSA, 29 U.S.C. Sec 215(3)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth

herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Four: Wrongful Termination in Violation of Public Policy (Tax Evasion – Truck Maintenance Complaints)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Five: Wrongful Termination in Violation of Public Policy (Tax Evasion – Wages)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Six: Wrongful Termination in Violation of Public Policy (Tax Evasion – Scrap Orders)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth

herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Seven: Wrongful Termination in Violation of Public Policy (Dept. Energy and Env. Protection)**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**Count Eight: Wrongful Termination in Violation of Conn. Gen. Stat. Sec. 31-51q – Protected Speech**

1. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein.

59. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages.

60. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

61. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

***WHEREFORE***, the Plaintiff demands the following:

1. Lost wages and benefits;
2. front pay;
3. double damages;
4. attorney's fees, costs and interest;
5. emotional distress;
6. punitive damages; and
7. such other relief as the Court deems just and appropriate.

**THE PLAINTIFF,**
**RONALD PAKUTKA**

**By: __/s_____________________**

**Michael T. Petela, Jr., Esq.**
**The Law Office of Michael T. Petela, Jr.**
**75 Glen Haven Rd**
**New Haven, CT 06513**
**203-824-2584**
**michael.petela@gmail.com**

**CERTIFICATION**

I hereby certify that on March 30, 2017, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Michael T. Petela, Jr.
ct28251
The Law Office of Michael Petela
75 Glen Haven Rd
New Haven, CT 06513
michael.petela@gmail.com